IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

ROXANNE PEREZ, *Plaintiff/Appellant*,

*v.*

CIRCLE K CONVENIENCE STORES, INC., *Defendant/Appellee*.

No. 1 CA-CV 22-0425
FILED 4-9-2024

---

Appeal from the Superior Court in Maricopa County
No. CV2020-010129
The Honorable Joan M. Sinclair, Judge

**AFFIRMED**

---

COUNSEL

Ahwatukee Legal Office, P.C., Phoenix
By David L. Abney
*Co-Counsel for Plaintiff/Appellant*

Phillips Law Group, P.C., Phoenix
By Timothy G. Tonkin, Nasser Abujbarah, Kevin Valdez
*Co-Counsel for Plaintiff/Appellant*

The Sorenson Law Firm, LLC, Tempe
By Wade R. Causey
*Counsel for Defendant/Appellee*

**OPINION**

Judge Anni Hill Foster delivered the opinion of the Court, in which Presiding Judge Samuel A. Thumma joined. Vice Chief Judge Randall M. Howe specially concurred.

F O S T E R, Judge:

¶1 The question of duty for an Arizona common law claim is an issue of law for courts to decide, whereas factual issues such as breach and causation are issues of fact typically resolved by a jury. In this case, summary judgment was granted in favor of defendant Circle K Convenience Stores, Inc. ("Circle K") on the basis that no duty existed. Plaintiff Roxanne Perez appeals that order. For the following reasons, the ruling is affirmed.

**FACTS AND PROCEDURAL HISTORY**

¶2 On March 13, 2020, Perez went to a Circle K store in Phoenix to buy some ice cream. She was familiar with the store, having been there 25 to 30 times before. Perez walked down the first aisle and grabbed ice cream from a freezer. She took a few steps to go to the next aisle but tripped and fell over a case of water at the end of the aisle (the "end cap"). Perez admitted she did not look down after she grabbed the ice cream and turned around. Perez admitted that, if she had looked down, she would have seen the case of water. She also admitted that there was plenty of light in the store and she had seen end cap displays at other stores before the incident.

¶3 As a result of the fall, Perez suffered significant injuries to her elbow, neck, and back. Perez subsequently filed this negligence and premises liability action against Circle K.

¶4 Circle K later moved for summary judgment, and after full briefing and oral argument, the superior court granted the motion. The superior court concluded that no evidence showed that the case of water created an unreasonably dangerous condition. "[W]hile the case of water may have created a dangerous condition, it did not create an unreasonably dangerous condition," adding Perez "could have seen the case of water had she looked down," suggesting "that the condition was open and obvious."

¶5        Perez timely appealed from the resulting final judgment. This Court has jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶6        When there is no genuine issue of "material fact and the moving party is entitled to judgment as a matter of law," this Court will affirm a grant of summary judgment. Ariz. R. Civ. P. 56(a); *Thompson v. Pima Cnty.*, 226 Ariz. 42, 44, ¶ 5 (App. 2010). A grant of summary judgment is reviewed *de novo*, viewing the facts in a light most favorably to Perez. *See Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003).

## I. THE SUPERIOR COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT TO CIRCLE K.

### A. The issue of duty is a legal question to be addressed by the courts.

¶7        Perez must, among other things, plead and be able to prove that Circle K owed her a duty under Arizona law. *See, e.g., Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 563-64, ¶ 7 (2018) (citing cases). More specifically, Perez must plead and be able to prove Circle K owed a duty "to conform to a particular standard of conduct to protect her against unreasonable risks of harm." *Dinsmoor v. City of Phoenix*, 251 Ariz. 370, 373, ¶14 (2021) (citing *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶¶ 9–10 (2007)). Whether she has done so is a threshold issue that is determined as a matter of law. *Gipson*, 214 Ariz. at 143, ¶¶ 9, 11.  Absent such a duty, Circle K cannot be liable to her. *See, e.g., id.* at 143-44, ¶ 11 (Absent some duty, "defendants may not be held accountable for damages they carelessly cause, no matter how unreasonable their conduct."); *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 354 (1985) ("[A] negligence action may be maintained only if there is a duty or obligation[.]"). Unlike the other elements of common law torts, the court alone determines the existence and scope of any claimed duty. *See Dinsmoor*, 251 Ariz. at 373-74, ¶¶ 14-17.

¶8        To support her claim, Perez argues that she was a business invitee, meaning Circle K owed "'an affirmative duty' to use reasonable care to make the premises safe for [her] use." *Markowitz,* 146 Ariz. at 355 (quoting *Tribe v. Shell Oil Co., Inc.,* 133 Ariz. 517, 519 (1982)). Thus far, Perez correctly states the law. But when determining whether duty exists, a court cannot resolve the issue without examining the scope of the duty, including what it is not.

¶9        For generations, our supreme court has noted that a business owner like Circle K "is not an insurer of the safety of" a business invitee like

Perez. *See Berne v. Greyhound Parks of Ariz., Inc.*, 104 Ariz. 38, 41 (1968) (citing cases). Similarly, a business owner like Circle K "is not required . . . to keep the premises absolutely safe." *Id.* (citing cases).

¶10     More recently, the supreme court noted that duty also cannot be based on foreseeability. *Gipson*, 214 Ariz. at 144, ¶ 15 ("[F]oreseeability is not a factor to be considered by courts when making determinations of duty, and we reject any contrary suggestion in prior opinions."); *accord Cal-Am Props. Inc. v. Edais Eng'g Inc.*, 253 Ariz. 78, 81, ¶ 7 (2022).

¶11     Collectively, these cases hold that the question of the scope of the common law duty presented here is neither forward looking (through foreseeability) nor backward looking (what a defendant should have done). Instead, the scope of the duty is an issue of law the court determines based on the relationship and reasonableness of the circumstances. *See Dawson v. Withycombe*, 216 Ariz. 84, 107, ¶ 71 n.21 (App. 2007) (noting, in analogous circumstance, that "the scope of [a party's] fiduciary duty is a question of law").

**B. The scope of duty requires a court to determine whether a condition is "unreasonably dangerous."**

¶12     Perez argues that, when determining the legal question of duty, this Court cannot consider the facts of this case, which she claims are properly determined by the jury in addressing breach, causation and damages. *See Moore v. Sw. Sash & Door Co.*, 71 Ariz. 418, 423 (1951); Ariz. Const. art. 18, § 5. But, when answering the legal question of duty, courts may "consider facts to determine whether a duty exists based on the presence of an *unreasonable risk of harm* that arose within the scope of a special relationship." *Dinsmoor*, 251 Ariz. at 376, ¶ 27 (emphasis added).

¶13     The supreme court has unambiguously allowed for factual analysis in evaluating the only question before this court, which is the duty owed by Circle K. *See id.* at 376-77, ¶ 27.[1] To determine whether a condition is unreasonably dangerous the supreme court has continually stated:

> If people who are likely to encounter a condition may be expected to take perfectly good care of themselves without further precautions, then the condition is not unreasonably

---

[1] The Concurrence argues that *Dinsmoor* differs because of a special relationship in that case between a student and a school. But that argument requires a factual analysis of the nature of the relationship, something the Concurrence [at ¶ 39] states is impermissible in addressing duty.

dangerous because the likelihood of harm is slight. Of course, the bare fact that a condition is 'open and obvious' does not necessarily mean that it is not unreasonably dangerous. The open and obvious condition is merely a factor to be taken into consideration in determining whether the condition was unreasonably dangerous.

*Cummings v. Prater*, 95 Ariz. 20, 27 (1963) (quoting 2 Fowler V. Harper and Fleming James, Jr., *The Law of Torts* § 27.13 (1956)) (internal citations omitted); *Daughtry v. Montgomery Ward,* 102 Ariz. 267, 269-70 (1967); *McFarland v. Kahn*, 123 Ariz. 62, 62-63 (1979); *Smedberg v. Simons*, 129 Ariz. 375, 378 (1981). Perez contends that the superior court determined the standard of care and "violated the principle that courts decide duty and juries decide standard of care and breach." This argument, though, misconstrues the superior court's ruling which properly addressed the legal issue of duty—not breach—because the scope of determining duty includes a determination of reasonableness. *See Burke v. Ariz. Biltmore Hotel, Inc.*, 12 Ariz. App. 69, 72 (1970) (determining that "as a matter of law, the condition was not unreasonably dangerous").

¶14 Citing *Markowitz*, the Concurrence reasons that the majority's analysis is one of factual breach, rather than the legal question of duty and its scope. *Markowitz* stated that

> [t]he question of duty is decided by the court. The question is whether the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff. If the answer is no, the defendant is not liable even though he may have acted negligently in light of the foreseeable risk.

146 Ariz. at 356. But this is not the standard that has been consistently adopted by the supreme court. *See Gipson,* 214 Ariz. at 143, ¶ 10 ("Duty is defined as an 'obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm.'"); *Dinsmoor*, 251 Ariz. at 373, ¶ 14 (noting plaintiff must establish that defendant "owed a duty to [the plaintiff] to conform to a particular standard of conduct to protect her against unreasonable risks of harm"). Without examining the scope of the duty owed, a court cannot determine whether a relevant duty existed.

¶15 To accept the Concurrence's position, a court's only duty-based role in liability cases would be to determine the legal relationship of the parties, not the relationship *and* the reasonableness of the circumstances

as is necessary in determining duty. In such a world, if a plaintiff minimally alleged being injured while on the property of a business, the issue of duty could never be resolved by motion short of trial.

**¶16** The Concurrence's reliance on *Markowitz* is misplaced because numerous cases decided after *Markowitz* have instructed that out of the four elements necessary to establish negligence the first is a duty "to conform to a certain standard of care." *Cal-Am Props. Inc.*, 253 Ariz. at 81, ¶ 5; *see also Gipson*, 214 Ariz. at 143, ¶ 10; *see also Avitia v. Crisis Preparation and Recovery Inc.*, 256 Ariz. 198, 211, ¶ 63 (2023) (Timmer, V.C.J., concurring in part, dissenting in part, and concurring in the result) ("As we concluded in *Dinsmoor* . . .[,] a court does not act contrary to *Gipson* by examining the case-specific facts to decide whether 'an unreasonable risk of harm' arose from a special relationship to trigger a duty."). Here, the duty owed required that Perez not be subjected to the possibility of an unreasonable harm.[2]

**C. Perez did not establish that an "unreasonably dangerous" condition existed to support a duty under law.**

**¶17** "The burden of proving negligence rests upon the plaintiff, and it is not incumbent upon the defendant to prove an absence thereof." *Berne*, 104 Ariz. at 39 (citing *Pickwick Stages Corp. v. Messinger,* 44 Ariz. 174 (1934); *Salt River Valley Water Users' Ass'n. v. Blake*, 53 Ariz. 498 (1939)). "Moreover, it is not sufficient that the facts are such that negligence might have existed, but it must affirmatively appear that it did." *Id.* (citing *McGuire v. Valley Nat'l Bank of Phx.*, 94 Ariz. 50 (1963); *Butane Corp. v. Kirby*, 66 Ariz. 272, 282 (1947); *Seiler v. Whiting*, 52 Ariz. 542 (1938)). At her deposition, Perez stated that she would have seen the case of water if she had looked down. This admission contradicts her assertion that the "danger was hidden and not obvious" and demonstrates that the presence of the case of water was "clearly visible." *See Burke*, 12 Ariz. App. at 70–71 (finding that no unreasonably dangerous condition existed after the plaintiff slipped and fell on a top step because the black strip marking the top step was "clearly visible"); *Hagan v. Sahara Caterers, Inc.*, 15 Ariz. App. 163, 166 (1971) (finding that no unreasonably dangerous condition existed after the

---

[2] Claiming *Dinsmoor*, as discussed here, is inconsistent with *Markowitz*, the Concurrence [¶ 47] asks the Supreme Court to grant review "to resolve that conflict." But Arizona common law was not frozen in time in the *Markowitz* decision, as the Supreme Court has made clear in the nearly forty years since that decision.

plaintiff slipped on pebbles outside a restaurant that were "visible to the plaintiff" and therefore no duty existed).

**¶18**  Perez also stated she visited the store 25 to 30 times previously, and while she did not remember this store displaying products at the end caps, she testified that she was aware stores often have end cap displays. These facts are analogous to *Hagan* where the plaintiff had previously been to the restaurant and had seen the pebbles that she later slipped on resulting in a determination that the condition was not unreasonably dangerous. 15 Ariz. App. at 165.

**¶19**  Perez points to testimony from Mark Whitmire, Circle K's Rule 30(b)(6) witness, who testified to a "two-foot rule" Circle K provided to its stores as a guideline. Perez asserts that Whitmire's statements that he would have moved the product back towards the end cap and that it appeared to be a "hazardous situation" requiring remedying establish that Circle K was on notice that the condition was unreasonably dangerous. But nothing in Whitmire's testimony supports that the case of water was unreasonably dangerous under the law. *See Burke*, 12 Ariz. App. at 71. As the superior court correctly noted, "Whitmire did not testify at his deposition that the product displayed in the store in this case was an unreasonably dangerous condition." At best, his testimony indicates that the store did not follow its own two-foot "guideline" for stacking products. A guideline or policy does not create a duty that does not exist in law, rather it speaks to the standard of care and whether there was a breach of that standard. *See Ponce v. Parker Fire Dist.*, 234 Ariz. 380, 385, ¶ 20 (App. 2014). No evidence was presented demonstrating it was unreasonable that the case of water was on the floor. Further, nothing in the record suggests that other customers tripped on a case of water or any other item displayed at an end cap. The determination of duty is not dictated by testimony but by the record presented. *See Hafner v. Beck*, 185 Ariz. 389, 393 (App. 1995).

**¶20**  A "defective condition" is not necessarily synonymous with "dangerous condition" and becomes so only when the defective condition creates an unreasonable risk of harm. *Berne*, 104 Ariz. at 41. The mere fact that an injury has been sustained does not give rise to a presumption that a defective condition created an unreasonable risk of harm. *See Daugherty*, 102 Ariz. at 269.

**¶21**  Citing *Walker v. Montgomery Ward & Co., Inc.*, 20 Ariz. App. 255 (1973) and *Andrews v. Fry's Food Stores of Ariz.*, 160 Ariz. 93 (App. 1989), Perez argues the superior court erred because reasonable people could differ as to whether Circle K created an unreasonably dangerous condition or an "open and obvious danger." The procedural posture of both cases

though differentiates them from Perez's claims and this case. In *Walker*, the issue addressed was not one of duty but of causation and whether the owner of the premises exercised due care, not whether there was a duty. 20 Ariz. App. At 258. *Andrews* involved a question about the propriety of jury instructions as to causation, not duty. 160 Ariz. at 94. Neither case supports the premise that a duty existed here.

¶22 Perez also cites (albeit in passing) *Tribe*, 133 Ariz. 517, to support her position that the condition was "unreasonably dangerous." But *Tribe* is distinguishable. In *Tribe*, the court found a disputed issue of fact, concluding that "[r]easonable minds could easily disagree as to whether a sixteen-inch step down is open and obvious to one who has ascended a six-inch step." 133 Ariz. at 519. Unlike this case, however, *Tribe* involved a circumstance where "a station wagon obstructed [plaintiff's] view." *Id*. The plaintiff in *Tribe* testified that she was distracted by passing "traffic and her concern for her child's safety." *Id*. Perez never testified that she was distracted or that the case of water was obscured from view. Nor has Perez shown that *Tribe*—which turned on foreseeability (whether "the proprietor should anticipate the harm from the condition despite its obviousness"), *id.*—survived *Gipson's* recent mandate that "foreseeability is not a factor" in defining duty, *Gipson*, 214 Ariz. at 144, ¶ 15.

¶23 While the Concurrence charges that this reasoning addresses breach rather than duty, that is not the case. If duty relies on the relationship between the parties and the reasonableness of the circumstances, the known or obvious nature of a condition is necessary to determine reasonableness. Here, Perez's own admissions do not support that the condition was unreasonable. While factual questions of breach or causation are not addressed in a legal analysis of duty, facts used to support them can be applicable in determining duty.

¶24 Perez points to illustrations in the Restatement (Second) of Torts § 343A cmt. f to urge that stores like Circle K should be on notice that their store displays are distracting. Her reliance though is misplaced, and her argument is not persuasive since the Restatement contradicts her position. *See* Restatement (Second) of Torts § 343A cmt. e (1965) (illustrating that a company is not liable when a customer preoccupied with his own thoughts walked straight into a glass door that was open and obvious).

¶25 None of the cases cited support Perez's position that the superior court erred. Perez is correct that the questions of causation and standard of care are issues of fact. But the occurrence of a fall on business premises does not by itself establish negligence. *Contreras v. Walgreens Drug Store No.* 3837, 214 Ariz. 137, 138, ¶ 7 (App. 2006). Considering the direction

given by *Dinsmoor*, facts may be examined to determine whether the condition was "unreasonably dangerous" for the purposes of determining duty under the law. *Dinsmoor*, 251 Ariz. at 376-77, ¶ 27. Here, neither the law nor the evidence suggests that there was an unreasonably dangerous condition that would establish a duty in this case.

**D. The Determination of Duty Does Not Include Foreseeability or Assumption of Risk.**

¶26        Perez cites Article 18, § 5 of the Arizona Constitution, arguing that the superior court erred by determining factual issues that should have been submitted to a jury. This Court agrees that contributory negligence and assumption of risk are questions for a jury, but it does not read the superior court's ruling as determining those issues.

¶27        The superior court's role was not to determine whether the condition in the store was "open and obvious" under a standard of care analysis, whether the condition in the store caused Perez's injuries or whether Circle K met the standard of care. Its role was to determine whether the facts, as established by Perez, created a duty under law for Circle K. In determining duty, the superior court was permitted to examine facts sufficient to establish whether an "unreasonably dangerous" condition existed to trigger a duty by Circle K under law. *Dinsmoor*, 251 Ariz. at 376-77, ¶ 27. The superior court's analysis and conclusion are consistent with governing case law in deciding the threshold question—whether a duty exists. *See Gipson*, 214 Ariz. at 143, ¶ 9 ("The first element [of a claim for negligence], whether a duty exists, is a matter of law for the court to decide." (citing *Markowitz*, 146 Ariz. at 356)).

¶28        Perez has not shown that duty based on foreseeability has survived the Arizona Supreme Court's directive that "foreseeability is not a factor to be considered by courts when making determinations of duty." *Id.* at 144, ¶ 15. Moreover, although Perez argues it is a "reasonable inference" that a customer would be distracted by eye-level displays, she never stated that she was distracted by a store display. Perez's argument–that Circle K should have expected the attractive store displays could distract her–fails.

¶29        Finally, Perez argues that the superior court's ruling incorrectly determined contributory negligence and assumption of risk, which is a question for a jury. As stated herein, Perez was expected to take care of herself in regard to reasonable risks—such as a trip and fall over a visible object. This requirement is not a determination of contributory negligence or assumption of risk—it is the standard used to determine

liability. Because Perez's evidence fails to demonstrate that the case of water was "unreasonably dangerous," the superior court was correct in determining that she was responsible for taking care to prevent her injury.

## II. ADMISSIBILITY OF STATEMENTS FROM THE CIRCLE K EMPLOYEES

¶30 At her deposition, Perez testified that after she fell, a Circle K employee told her the cases of water where she fell are normally stacked at waist-height. Perez added the employee apologized and stated the display of water was not normally in the condition it was when she fell. Perez contends that the superior court erred when it ruled that statements by Circle K employees are inadmissible hearsay.

¶31 This Court agrees with Perez. The evidence was admissible and should have been considered. An opposing party's statement offered against an opposing party is admissible and is not hearsay. Ariz. R. Evid. 801(d)(2)(D). But these statements by a Circle K employee, as reported by Perez, do not address the threshold issue of duty. They do not establish that the employee, and thereby Circle K, were on notice of the condition such that it would create a duty. Instead, these statements speak to standard of care, breach, and causation. Accordingly, although properly part of the summary judgment record, these statements do not alter the result.

## CONCLUSION

¶32 For the foregoing reasons, the superior court's grant of summary judgment is affirmed. Circle K is awarded its taxable costs incurred on appeal contingent upon its compliance with Arizona Rule of Civil Appellate Procedure 21. Perez's request for taxable costs is denied.

**H O W E**, Judge, specially concurring:

¶33 I concur with the Majority that the superior court erred in holding that the statements of the Circle K employee were inadmissible, but that the error did not affect the propriety of granting summary judgment. I also concur that the superior court correctly granted Circle K summary judgment. Summary judgment was appropriate here, in my view, because Perez failed to show a genuine issue of material fact that Circle K breached its duty of care to her when she shopped at the store.

¶34 The Majority has chosen a different analysis in affirming the granting of summary judgment, however. I regret I cannot join this analysis because it contradicts decisions from the Arizona Supreme Court and this court defining duty and breach in tort actions. The Majority holds that in

determining as a matter of law whether Circle K owed a duty to keep its premises reasonably safe for its business invitees such as Perez, that determination includes resolving the factual question whether the condition that may have caused the injury was unreasonably dangerous or whether it was open and obvious. *See supra* ¶¶ 12–13.

**¶35** This holding intermixes the issues of duty and the breach of that duty. "Duty" is an obligation recognized by law that requires a tort defendant to conform to a particular standard of care to protect others against unreasonable risks of harm. *Gipson v. Kasey*, 214 Ariz. 141, 143 ¶ 10 (2007). It involves "generalizations about categories of cases," *id.*, and is a matter of law for the court to decide, *id.* at 143 ¶ 9. The standard of care is what the defendant must do or not do to satisfy that duty, and whether the defendant has met or breached the standard of care "is an issue of fact that turns on the specifics of the individual case." *Id.* at 143 ¶ 10. This issue is "usually decided by the jury." *Id.* at 143 ¶ 9.

**¶36** Here, in my view, the existence of a duty is clear as a matter of law. In the general category of cases involving possessors of land in relation to their invitees, possessors of land have a duty to maintain their premises in a condition reasonably safe for invitees. *Fort Lowell – NSS Ltd. P'ship v. Kelly*, 166 Ariz. 96, 101 (1990); Restatement (Second) of Torts § 343 (1965). Circle K is a possessor of the store in which Perez was injured, Restatement (Second) of Torts § 328(E), and Perez, as a customer of the store, was a business invitee, *id.* § 332(3). Circle K thus owed a duty to Perez to keep its premises reasonably safe for her.

**¶37** The Majority believes this analysis is incomplete, however. It holds that the duty determination also includes deciding whether the condition that allegedly caused Perez's injury created "an unreasonable risk of harm," *supra* ¶ 12, implicitly relying on Restatement (Second) of Torts § 343, which provides that a possessor of land is not liable for physical harm to invitees caused by a condition unless the possessor knows or should reasonably know that the condition "involves an unreasonable risk of harm." And even when a condition involves an unreasonable risk of harm, the possessor is still not liable if the danger is "known or obvious" to the invitee. *Id.* § 343A.

**¶38** But whether a condition "involves an unreasonable risk of harm" or is "known or obvious" are factual questions that go to whether a defendant has breached its duty, not a part of the duty analysis. *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 355–56 (1985) (whether a danger is open and obvious is a question of breach, not duty); *Tribe v. Shell Oil Co., Inc.*, 133 Ariz. 517, 519 (1982) (whether a danger is open and obvious is a fact question "to

be decided by a jury"); *Shaw v. Petersen*, 169 Ariz. 559, 561 (App. 1991) (whether a pool is an open and obvious danger to a child "is a question that relates to the breach of duty, not its existence"); *McLeod v. Newcomer*, 163 Ariz. 6, 9 (App. 1989) (because duty was established, whether a pool was an unreasonably dangerous condition was a fact question that could not be determined as a matter of law in that case); *Bellezzo v. State*, 174 Ariz. 548, 555 (App. 1992) (Claborne, J., concurring) ("Arizona [has] said time and time again that an open and obvious danger is a fact question not to be decided by a judge."); *George v. Fox W. Coast Theatres*, 21 Ariz. App. 332, 334 (1974) (evidence was such that the jury could infer that condition was unreasonably dangerous). Notably, the applicable Restatement provisions do not state that the existence of a condition that creates an unreasonable risk of harm or its known or obvious characteristic is a part of the duty analysis; they speak merely in terms of "liability," consistent with those questions being part of the breach analysis. *See* Restatement (Second) of Torts § 343 (the possessor "is subject to liability" if condition "involves an unreasonable risk of harm"); *id.* § 343A (the possessor "is not liable" if the condition is "known or obvious").

¶39        The Majority's analysis contradicts these decisions, incorporating factual questions of breach in its duty determination. "[H]aving established the special relationship—duty—the court cannot negate the existence of that duty through a breach analysis." *Shaw*, 169 Ariz. at 561. Our supreme court "disapprove[s] of attempts to equate the concept of duty with specific details of conduct." *Markowitz*, 146 Ariz. at 355. "[T]he existence of a duty is not to be confused with details of the standard of conduct." *Id.* But the Majority's analysis brings in the specific details of Perez's case to determine Circle K's duty. The Majority discusses whether (1) the water cases were visible; (2) Perez could or did see the water cases; (3) Perez had visited the Circle K enough times to be familiar with end cap displays; (4) Perez knew about end cap displays; (5) other customers had tripped on the end cap displays; and (6) the Circle K employees followed store guidelines in placing the end cap displays. *See supra* ¶¶ 17–19. These facts are important indeed to determine whether Circle K did or did not protect Perez from an unreasonable risk of harm and whether the danger from the end cap was open and obvious, but they are not relevant to whether Circle K had a duty to Perez in the first place. Duty involves "generalizations about categories of cases," *Gipson*, 214 Ariz. at 143 ¶ 10, in this case, the duty of possessors of land to their invitees. Considering the specific facts of Perez's case in deciding duty is at war with that principle.

¶40        The supreme court's decision in *Markowitz* is instructive. There, a young man was injured in a cliff diving accident on public land.

146 Ariz. at 354. The young man sued the State for negligence, and the trial court granted the State summary judgment. *Id.* This court affirmed the summary judgment, ruling that the State owed no duty to the young man because "the natural environment did not present an unreasonable risk of harm" and the danger was open and obvious. *Id.* (quoting *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 260, 264 (App. 1984)).

¶41    The supreme court reversed on review. *Id.* at 359. The court explained that the question of duty is "whether the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff." *Id.* at 356. "[T]he concept of duty is not a question of whether the danger was natural, artificial, obvious[,] or whether the defendant should have searched for, warned of[,] or removed the danger or have taken any other particular action." *Id.* Those questions, the court explained, are questions of negligence, determining whether the defendant's conduct was reasonable under the circumstances. *Id.* at 357.

¶42    The same analysis applies here. Because Circle K is a possessor of land, and Perez was its business invitee, as a matter of law Circle K owed a duty to Perez to keep its premises safe. The questions whether the end cap display that tripped her created an unreasonable risk of harm and whether the display was open and obvious to Perez are fact questions that go to whether Circle K breached that duty and are not—absent a failure of proof under the summary judgment standard, *Gipson*, 214 Ariz. at 143 ¶ 9 n.1—for this court to resolve. The Majority's analysis blends factual questions going to breach into its duty determination when those issues should be distinct.

¶43    A consequence of that blending is confusion for courts and for litigants. Which facts go to duty—which a court can find—and which facts go to breach—which only a jury can find? What rule determines which side certain facts fall on? Any set of facts can be read to go to the scope of a duty or to breach. *See, e.g., Markowitz*, 146 Ariz. at 356 (rejecting this court's inclusion of the obviousness of the danger within a duty analysis rather than a breach analysis); *Shaw*, 169 Ariz. at 561 (rejecting trial court's ruling that the open and obvious nature of a pool was a part of a duty analysis). This confusion is especially acute here because, historically, questions of unreasonable risk of harm and the open and obvious nature of a danger have been for a jury, not a court, and courts have been admonished for overstepping their role. *See, e.g., Markowitz*, 146 Ariz. at 355-56; *Shaw*, 169 Ariz. at 561. Blurring the distinction between duty and breach of that duty runs counter to the supreme court's attempt to establish a clear demarcation between them in *Gipson*, 214 Ariz. at 143 ¶ 9. As the supreme court clearly

stated in *Gipson*: "A fact-specific analysis of the relationship between the parties is a problematic basis for determining if a duty of care exists. The issue of duty is not a factual matter; it is a legal matter to be determined *before* the case-specific facts are considered." *Id.* at 145 ¶ 21. The Majority's analysis does just what *Gipson* warned against.

¶44 The Majority cites as authority for its analysis *Dinsmoor v. City of Phoenix*, 251 Ariz. 370 (2021). The supreme court says there that "[w]e do not understand *Gipson* as meaning a court cannot consider facts to determine whether a duty exists based on the presence of an unreasonable risk of harm that arose within the scope of a special relationship." *Id.* at 376 ¶ 27. While that statement on its face may support the Majority's position that it can consider facts addressing unreasonable risk of harm in determining the scope of duty, on closer inspection, the statement does not apply to this case.

¶45 *Dinsmoor* was a tragic case of a student murdered off campus by another student when school personnel were arguably aware that violence might occur, and the issue was whether the school owed a duty of care to the murdered student. *Id.* at 371-72 ¶ 1. In determining the scope of the school's duty to its students, the supreme court held that no duty of care existed because any unreasonable risk of harm did not arise during the school-student relationship. *Id.* at 377 ¶¶ 28-29. The facts showed that the risk of harm to the student did not exist until after the student left the school's supervision. *Id.* at 377 ¶ 28. That is the context in which the supreme court stated that specific facts of the case can be considered in determining duty.

¶46 Taken in context, the *Dinsmoor* statement does not apply here. *Dinsmoor* presented unusual facts requiring the resolution of geographic and temporal limits of a school's duty to its students, which had statewide effect. In contrast, this case, while vitally important to the parties, presents mundane facts and issues: did the store owner take appropriate precautions to keep its premises safe for its customers like Perez? No question exists whether the allegedly unreasonable risk of harm to Perez—placing the water cases at the end cap, creating the risk of tripping and physical injury—occurred within the context of the land possessor/business invitee relationship. Breach, not duty, is the issue here, and language from a case addressing different issues should not be taken out of context to upend settled law.

¶47 In any event, if my understanding of *Dinsmoor* turns out faulty and *Dinsmoor* applies to this case, it is inconsistent with *Markowitz* and the other cases holding that whether an unreasonable risk of harm

14

exists and whether the danger is open and obvious are factual questions not for a court to resolve, but for a jury. *See supra* ¶ 38. In that event, I would urge the supreme court to grant review in this case to resolve that conflict.

¶48    The Majority believes my analysis faulty. But the alleged faults, with respect, are not well-taken. First, the Majority argues that the supreme court has not consistently followed the rule it expressly stated in *Markowitz*, relying on *Dinsmoor*. *See supra* ¶ 14. But given the number of supreme court and court of appeals decisions following *Markowitz* before *Dinsmoor* holding that the issues of unreasonable risk and the open and obvious nature of the danger are breach questions, *see supra* ¶ 38, inconsistency is hardly a problem. And as noted, *Dinsmoor*, rightly understood, *see supra* ¶¶ 44–45, is not inconsistent with *Markowitz*. Moreover, if the Majority is correct that *Markowitz* and *Dinsmoor* are inconsistent, all the more reason for the supreme court to grant review and resolve the inconsistency.

¶49    Second, the Majority argues that under my analysis, once the legal relationship between a plaintiff and a defendant is established and a plaintiff "minimally allege[s] injury," the issue of duty must go to trial, *see supra* ¶ 15, apparently because the unreasonableness of the risk of harm and the open and obvious nature of the danger can be resolved only by a jury. But this argument assumes an incorrect premise, that the unreasonableness of the risk and the open and obvious nature of the danger are questions that pertain to duty. These factual questions are, as the supreme court and this court have repeatedly held, part of the breach analysis. *See supra* ¶ 38. So a court can resolve the issue of duty as a legal matter without regard to contested facts that must be submitted to a jury.

¶50    Moreover, the fact that a court must determine duty without considering the unreasonableness of the harm and the open and obvious nature of the danger does not mean, as the Majority seems to imply, that tort cases will more easily survive summary judgment. A court's determination that a defendant owes a duty of care to a plaintiff is never by itself enough to get a case to trial. The plaintiff must still also show that a genuine issue of material fact exists whether the defendant breached that duty, whether the defendant caused the plaintiff injury, and whether the plaintiff suffered damages. *See Gipson*, 214 Ariz. at 143 ¶ 9. If a plaintiff fails to show a genuine issue of material fact on any of these elements, summary judgment is warranted. Ariz. R. Civ. P. 56(a); *Gipson*, 214 Ariz. at 143 ¶ 9 n.1. For this reason, while the Majority and I disagree whether unreasonable risk and the open and obvious nature of danger should be accounted for under the duty element or the breach element, our disagreement does not affect the likelihood of surviving a summary judgment motion because a

plaintiff still has to present sufficient evidence on that point to survive summary judgment.

**¶51** Third, the Majority takes issue with the distinction I have observed in *Dinsmoor*. The Majority claims that determining *when* an unreasonable risk of danger arose—the factual determination the supreme court made in *Dinsmoor*—is the same as determining *if* an unreasonable risk of danger exists—as the Majority does in this case. *See supra* ¶ 13 n.1. But that is not true. Determining when a danger may have arisen is a narrow question that specifically pertains to duty. If, as in *Dinsmoor*, the danger of murder occurred outside the time that the school supervised the student, then the school had no duty to the student. 251 Ariz. at 377 ¶ 28. Whether the placement of the water cases in this case constituted an unreasonable risk of danger—which undoubtedly occurred during the land possessor/business invitee relationship—is a broader factual question that goes to breach of the duty of care. *See* ¶ 38. *Dinsmoor* should not be read to blur the clear demarcation between the legal question of duty and the factual question of breach of that duty.

**¶52** These are the reasons I, respectfully, cannot join the Majority's analysis, although I agree that summary judgment was appropriate. I therefore concur in the judgment.

