IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

---

RACHELLE RENEE WESTERMAN AND PAUL "BRYAN" WESTERMAN,
WIFE AND HUSBAND,
*Plaintiffs/Appellants*,

*v.*

TIMOTHY E. ERNST AND SUSAN WEIL ERNST, TRUSTEES OF THE WEIL ERNST
TRUST DATED SEPTEMBER 10, 2009, AS TO AN UNDIVIDED 20% INTEREST IN THE
REAL PROPERTY SITUATED IN MARICOPA COUNTY, ARIZONA, COMMONLY
KNOWN AS TIERRA DEL SOL; ALAN R. SCHNEIDER AND SHERIE SCHNEIDER,
TRUSTEES OF THE SCHNEIDER FAMILY TRUST UTA DATED JULY 20, 1998, AS TO
AN UNDIVIDED 80% INTEREST IN THE REAL PROPERTY SITUATED IN MARICOPA
COUNTY, ARIZONA, COMMONLY KNOWN AS TIERRA DEL SOL,
*Defendants/Appellees*.

No. 2 CA-CV 2023-0205
Filed January 22, 2025

---

Appeal from the Superior Court in Maricopa County
No. CV2022000273
The Honorable Joan M. Sinclair, Judge

## VACATED AND REMANDED

---

COUNSEL

Stanley R. Lerner P.C., Phoenix
By Stanley R. Lerner

and

Kevin Koelbel, Mesa
*Counsel for Plaintiffs/Appellants*

O'Connor & Dyet P.C., Tempe
By Shane P. Dyet and Andres Chagolla III
*Counsel for Defendants/Appellees*

---

**OPINION**

---

Presiding Judge Gard authored the opinion of the Court, in which Chief Judge Staring and Judge Eckerstrom concurred.

---

G A R D, Presiding Judge:

**¶1**　　　　In this premises-liability case, Rachelle and Bryan Westerman appeal from the superior court's order granting summary judgment in favor of Timothy and Susan Weil Ernst, Trustees of the Weil Ernst Trust, and Alan and Sherie Schneider, Trustees of the Schneider Family Trust ("Ernst and Schneider"). Together, Ernst and Schneider own Tierra del Sol, a shopping center at which Rachelle suffered injuries in a fall. In granting summary judgment, the court concluded as a matter of law that 1) at the time she fell, Rachelle's status on Ernst and Schneider's land had changed from invitee to trespasser, extinguishing their duty to make their premises reasonably safe for her, and 2) the condition associated with Rachelle's injury was open and obvious and not unreasonably dangerous. We conclude that genuine issues of material fact exist on both questions, *see* Ariz. R. Civ. P. 56(a), and therefore vacate the court's order and remand for proceedings consistent with this decision.

**Factual and Procedural Background**

**¶2**　　　　As they are the non-moving parties, we view the facts in the light most favorable to the Westermans and draw all reasonable inferences in their favor. *See Noriega v. Town of Miami*, 243 Ariz. 320, ¶ 2 (App. 2017). Tierra del Sol is an outdoor shopping center in the Phoenix area. It contains a veterinary clinic and a neighboring beauty-supply shop, both of which sit at slightly higher elevations than the center's parking lot. Customers can access these businesses from the parking lot by climbing a short staircase and following a concrete walkway that runs alongside the storefronts. The area between the walkway and the parking lot is landscaped with trees and bushes and covered with decorative gravel. The trees and bushes do not

fill up the gravel area, nor do they create a continuous barrier between the parking lot and the walkway.

¶3          One morning in January 2020, Rachelle took her two dogs to the veterinary clinic. She parked in front of the beauty-supply shop and climbed the stairs from the parking lot to reach the clinic. When she checked in, Rachelle learned that her dogs' appointment was scheduled for later in the day, so she decided to go home and return at the appropriate time. Before she left, Rachelle asked a veterinary employee where her dogs could urinate. The employee told Rachelle that they could urinate in the gravel area alongside the walkway.

¶4          Rachelle took her dogs to a section of gravel located between the sidewalk and her car. There were two bushes nearby with a space in between them; Rachelle anticipated her dogs would urinate on one of the bushes after which she would walk in between the bushes and across the gravel—a distance of approximately two feet—to reach her car. But the surface of the gravel was lower than the walkway, and Rachelle did not perceive the change in elevation. She fell as she stepped off the concrete, suffering a broken ankle and other injuries.

¶5          The Westermans thereafter filed a complaint alleging Ernst and Schneider had negligently failed to remedy or warn customers of the unreasonably dangerous condition caused by the drop in elevation from the walkway to the gravel.[1] Ernst and Schneider moved for summary judgment, arguing that they owed Rachelle no duty because, at the time she fell, she had exceeded the scope of her invitation by leaving the designated walkway and encroaching on the landscaped area, where patrons were not invited to walk. Alternatively, Ernst and Schneider argued that, even if Rachelle had not exceeded the scope of her invitation, the change in elevation was open and obvious and thus did not qualify as an unreasonably dangerous condition.[2]

---

[1]The first amended complaint also named as defendants Tierra del Sol's property management company and the individual property manager. The parties, however, stipulated to dismiss those defendants because Ernst and Schneider would have been vicariously liable for any negligence on their part.

[2]The Westermans filed a cross-motion for summary judgment. The superior court, however, granted Ernst and Schneider's motion before receiving responsive briefing on the cross-motion. The Westermans'

**¶6**        The superior court agreed with Ernst and Schneider on both points and granted their motion for summary judgment.  The court determined Rachelle had exceeded her invitation's scope by entering the landscaping and, as a result, Ernst and Schneider "no longer owed her the same duty that is owed to invitees."  Relying on our supreme court's decision in *Nicoletti v. Westcor, Inc.*, 131 Ariz. 140 (1982), the court reasoned that Rachelle had attempted a shortcut through the "clearly landscaped" gravel area, which no reasonable person could have regarded as a designated walkway.  The court further determined that the height differential between the walkway and the gravel's surface was open and obvious and could not, as a matter of law, have constituted an unreasonably dangerous condition.

**¶7**        The superior court denied the Westermans' subsequent motion to reconsider and entered final judgment in favor of Ernst and Schneider.  The Westermans appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## Discussion

**¶8**        The Westermans argue that both issues the superior court resolved turned on disputed facts and were inappropriate for summary judgment.  We review de novo the superior court's order granting summary judgment, *Neptune Swimming Found. v. City of Scottsdale*, 256 Ariz. 497, ¶ 23 (2024), as well as its determination that Ernst and Schneider owed Rachelle no duty, *see Quiroz v. ALCOA Inc.*, 243 Ariz. 560, ¶ 7 (2018).

**¶9**        Summary judgment is appropriate only when "the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Ariz. R. Civ. P. 56(a); *see Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990) (court should grant summary judgment "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense").  To defeat summary judgment, the non-moving party must "present sufficient evidence demonstrating the existence of a genuine factual dispute as to a material fact" by calling "the court's attention to evidence overlooked or ignored by the moving party" or explaining "why the motion should otherwise be denied."  *Nat'l Bank of*

---

cross-motion involved similar issues to Ernst and Schneider's motion, but it is not at issue in the present appeal.

*Ariz. v. Thruston*, 218 Ariz. 112, ¶ 26 (App. 2008). "Any evidence or reasonable inference contrary to the material facts—i.e., the facts which the moving party needs to show his entitlement to judgment—will preclude summary judgment." *United Bank of Ariz. v. Allyn*, 167 Ariz. 191, 195 (App. 1990). Although mere speculation is insufficient, "where the evidence or inferences would permit a jury to resolve a material issue in favor of either party, summary judgment is improper." *Id.*

## I.  Rachelle's status as invitee or trespasser

**¶10**       The Westermans contend there is an issue of material fact concerning whether Rachelle held invitee or trespasser status when she fell. Ernst and Schneider disagree, maintaining that no reasonable person could have believed that "taking a shortcut through the landscaped area was an appropriate means of ingress or egress" from the storefronts, particularly in light of the available sidewalk and stairway. We agree with the Westermans that the parties' relationship at the time of Rachelle's injury—which in turn defines the scope of the duty Ernst and Schneider owed Rachelle—is a disputed factual issue that a reasonable factfinder could resolve in the Westermans' favor. *See Allyn*, 167 Ariz. at 195. Summary judgment was therefore inappropriate.

### A.  Applicable law

**¶11**       To state a negligence claim, a plaintiff must show 1) a duty existed requiring the defendant to conform to a particular standard of care, 2) the defendant breached that duty, 3) there was a causal connection between the breach and the plaintiff's injury, and 4) damages. *Quiroz*, 243 Ariz. 560, ¶ 7. "Whether a duty exists 'is a legal matter to be determined *before* the case-specific facts are considered.'" *Id.* (quoting *Gipson v. Kasey*, 214 Ariz. 141, ¶ 21 (2007)).[3] Duty is "for the court to decide" as a threshold

---

[3]Our supreme court clarified *Gipson*'s language regarding case-specific facts in *Dinsmoor v. City of Phoenix*, 251 Ariz. 370, ¶ 27 (2021). There, the court declined to read *Gipson* to mean that "a court cannot consider facts to determine whether a duty exists based on the presence of an unreasonable risk of harm that arose within the scope of a special relationship." *Dinsmoor*, 251 Ariz. 340, ¶ 27. Rather, a court may examine a case's facts to determine whether any unreasonable risk of harm arose within the special relationship's scope. *Id.* ("Logically, a court cannot determine whether a duty arises from [special] relationships unless it considers whether an unreasonable risk of harm arose while, for example, persons were patronizing an inn, riding a bus, or . . . attending school.");

issue because "absent some duty, an action for negligence cannot be maintained." *Gipson*, 214 Ariz. 141, ¶¶ 9 & 11. In contrast, breach, causation, and damages are generally factual issues to be decided by a jury. *Id.* ¶¶ 9-10.

**¶12** A duty is a legally recognized obligation for a person to conform his or her conduct to a particular standard in order to protect others from an unreasonable risk of harm. *Wickham v. Hopkins*, 226 Ariz. 468, ¶ 8 (App. 2011). In Arizona, "duty is not presumed; in every negligence case, the plaintiff bears the burden of proving the existence of a duty." *Quiroz*, 243 Ariz. 560, ¶ 2. In determining whether a duty exists, a court may not consider whether a plaintiff's injury is foreseeable. *Id.* ¶¶ 11-13; *Gipson*, 214 Ariz. 141, ¶¶ 15-16. Rather, only a special relationship between the parties or public policy can give rise to a duty. *Quiroz*, 243 Ariz. 560, ¶ 14; *see also Avitia v. Crisis Preparation and Recovery Inc.*, 256 Ariz. 198, ¶ 26 (2023); *Cal-Am Props. Inc. v. Edais Eng'g Inc.*, 253 Ariz. 78, ¶ 9 (2022). And to prove that a special relationship created a duty, a plaintiff must establish "a preexisting, recognized relationship between the parties," such as a common-law or familial relationship, or a relationship stemming from a joint undertaking or contract. *Cal-Am Props. Inc.*, 253 Ariz. 78, ¶¶ 9-11.

**¶13** A special relationship exists between a landowner and certain persons who enter onto his or her property. *See, e.g., Gipson*, 214 Ariz. 141, ¶ 19. The landowner's duty to such visitors "is determined by the status of the entrant as an invitee, licensee, or trespasser." *Wickham*, 226 Ariz. 468, ¶ 11. "Landowners have a duty to invitees to maintain their property in a reasonably safe manner." *McMurtry v. Weatherford Hotel, Inc.*, 231 Ariz. 244, ¶ 34 (App. 2013). "This duty includes an obligation 'to provide reasonably safe means of ingress and egress.'" *Stephens v. Bashas' Inc.*, 186 Ariz. 427, 430 (App. 1996) (quoting *O'Rielly Motor Co. v. Rich*, 3 Ariz. App. 21, 26 (1966)).

**¶14** A landowner's duty to an invitee, however, exists only so long as the invitee "is upon the part of the premises which the occupier has held open to him for the purpose that makes him an invitee." *McMurtry*, 231 Ariz. 244, ¶ 34. The duty "may be diluted or extinguished if the invitee engages in explicitly or impliedly unpermitted activities or goes beyond the

---

*see also Perez v. Circle K Convenience Stores, Inc.*, 257 Ariz. 244, ¶¶ 44-46, 51 (App. 2024) (Howe, J., specially concurring) (interpreting *Dinsmoor* to allow factual consideration to determine when danger may have arisen).

area to which he or she is invited." *Nicoletti*, 131 Ariz. at 143; *see also Shiells v. Kolt*, 148 Ariz. 424, 425 (App. 1986) ("When an invitee engages in an explicitly or impliedly unpermitted activity, he cannot recover because there is no duty owed and thus no actionable negligence."). The scope of a person's invitation varies from case to case and "extends to all parts of the premises to which the purpose [of the invitation] may reasonably be expected to take him, and to those which are so arranged as to lead him reasonably to think that they are open to him." *Nicoletti*, 131 Ariz. at 143 (quoting W. Prosser, *Law of Torts* § 61, at 391-92 (4th ed. 1971)); *see also* Restatement (Second) of Torts § 332 cmt. l (1965) (recognizing that "[a]n invitation usually includes the use of such parts of the premises as the visitor reasonably believes are held open to him as a means of access to or egress from the place where his purpose is to be carried out" and that if the landowner "has intentionally or negligently misled" the visitor "into the reasonable belief that a particular passageway or door is an appropriate means of reaching the area of his invitation," the visitor retains invitee status while using it).

¶15        If an invitee exceeds the landowner's invitation, he or she becomes a trespasser to whom "the owner or occupier of property owes no duty . . . except to neither willfully nor intentionally inflict an injury." *Spur Feeding Co. v. Fernandez*, 106 Ariz. 143, 145 (1970); *see also Webster v. Culbertson*, 158 Ariz. 159, 161 (1988) (trespasser generally may not recover unless landowner "has been guilty of some willful or wanton disregard for the plaintiff's safety"); *Nicoletti*, 131 Ariz. at 142 (defining a trespasser as a "person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise" (quoting Restatement (Second) of Torts § 329 (1965))).

¶16        Finally, although it is a legal question, "the existence of a duty may depend on preliminary questions that must be determined by a fact finder." *Estate of Maudsley v. Meta Servs., Inc.*, 227 Ariz. 430, ¶ 23 (App. 2011) (quoting *Diggs v. Ariz. Cardiologists, Ltd.*, 198 Ariz. 198, ¶ 11 (App. 2000)); *see McMurtry*, 231 Ariz. 244, ¶¶ 33-36 (reversing grant of summary judgment based on questions of fact regarding whether decedent's status had changed to trespasser); *State v. Juengel*, 15 Ariz. App. 495, 499 (1971) ("Plaintiff's status as trespasser, licensee or invitee was contested and properly treated as a question of fact for the jury's determination."); *see also Dabush v. Seacret Direct LLC*, 250 Ariz. 264, ¶ 40 (2021) (although the question whether a party assumed a duty is generally factual, courts may resolve it as a matter of law where the facts are undisputed); *Woodty v. Weston's Lamplighter Motels*, 171 Ariz. 265, 270 (App. 1992) (noting that

"Arizona courts have determined as a matter of law whether a person's status changed to a licensee or trespasser because the person ventured outside the boundaries of the business invitation"). Accordingly, if there is a material factual issue concerning the parties' relationship, that issue may make summary judgment inappropriate.

### B. Analysis

**¶17** Ernst and Schneider do not dispute that Rachelle was an invitee while she was on the concrete walkway. They argue, however, that she lost that status once she left the walkway and stepped onto the gravel, while the Westermans contend she maintained it during her entire visit. Based only on its review of photographs, the superior court agreed with Ernst and Schneider, finding that "no reasonable person could have thought that th[e] landscaped gravel area was a designated walkway." As a result, the court determined, Rachelle ceased to be an invitee when she stepped off the concrete.[4] We disagree and conclude that, viewing the record in the light most favorable to the Westermans and drawing all reasonable inferences in their favor, *see Noriega*, 243 Ariz. 320, ¶ 2, there is a genuine issue of material fact regarding whether Rachelle's status had changed from invitee to trespasser.

**¶18** As noted above, a person's invitation extends to those portions of the premises that a reasonable person would believe was open to her. *See Nicoletti*, 131 Ariz. at 143; Restatement (Second) of Torts § 332 cmt. l (1965). Here, the photographs in the record depict a narrow and

---

[4]Based on the property manager's deposition testimony that she was unaware of persons walking in the gravel and would have stopped that behavior had she known of it, the superior court found that no implied invitation had occurred. *See McMurtry*, 213 Ariz. 244, ¶ 36 ("[W]hen a landowner is aware that unpermitted areas are used by patrons but does not object or take action preventing such use, an implied invitation has occurred and the landowner's duty to maintain safe premises extends to those areas."). At oral argument, the Westermans clarified their position on this issue: they do not assert that an implied *invitation* occurred but instead argue that crossing the gravel was impliedly *permitted*. *See id.* (suggesting that implied-invitation doctrine applies only when activity at issue is unpermitted). We therefore focus our analysis on whether crossing the gravel was "an explicitly or impliedly unpermitted activity," and do not address the implied-invitation doctrine further. *Nicoletti*, 131 Ariz. at 143; *see also Shiells*, 148 Ariz. at 425.

sparsely vegetated strip of gravel-covered dirt spanning approximately two feet. In the place where Rachelle fell, the strip provides a direct, convenient, and unobstructed route between the parking lot and the storefronts. Unlike in other areas of Tierra del Sol, there is no fence or other artificial barrier separating the walkway from the parking lot, nor is the vegetation of sufficient quantity or arrangement to create a continuous natural barrier. One photograph depicts displaced gravel and depressed dirt where Rachelle fell, and the Westermans infer from these defects that frequent foot travel had worn a path through the area.[5]

¶19        In addition to the photographs, Rachelle testified that she had seen other visitors crossing the gravel area, that Ernst and Schneider had given no indication it was off-limits, and that she believed it could be used as a walkway. The foregoing evidence is sufficient to create a genuine factual issue concerning whether a reasonable person would have regarded the gravel path as a conduit through which patrons were permitted to travel between the parking lot and the storefronts. *See Nicoletti*, 131 Ariz. at 143; Restatement (Second) of Torts § 332 cmt. l (1965); *see also In re Estate of Jung*, 210 Ariz. 202, ¶ 28 (App. 2005) ("[I]ssues of reasonableness are generally questions of fact.").

¶20        We disagree with Ernst and Schneider that this case is analogous to *Nicoletti*. There, a shopping mall employee walking to a remote employee parking lot attempted a shortcut through a raised planter, which was surrounded by a four- or five-inch-high curb and contained "vine-like ground cover" foliage. 131 Ariz. at 141-42. In doing so, the employee departed from a map the mall had provided her, which depicted a safe walking route to the lot. *Id.* Our supreme court determined that a "reasonable person could not have thought the planter was an appropriate means of egress from appellee's property nor had appellee misled her into a reasonable belief that it was a proper passageway." *Id.* at 144.

¶21        In contrast to *Nicoletti*, the gravel area here contained large, passable gaps between its pieces of greenery, it was not offset by any barriers, it was narrow in width, and it was positioned directly between two locations at which patrons were indisputably invited to be present—the parking lot and the storefronts. And while Ernst and Schneider provided a

---

[5]The cause of this apparent path is unclear. Although the Westermans' inference may ultimately be disproven at a trial on the merits, it is not unreasonable and we therefore draw it in their favor. *See Noriega*, 243 Ariz. 320, ¶ 2.

stairway and sidewalk for visitors to use, they did not expressly specify that visitors should use that route. *See McMurtry*, 231 Ariz. 244, ¶¶ 2-3, 35 (concluding that there was "no factual or legal support for the Hotel's implicit argument that" a guest who fell while trying to access a balcony adjacent to her room by climbing out her room's window and scaling its ledge "became a trespasser as soon as she climbed out of the window, particularly when the Hotel invited her to be present in her room and on the balcony").

**¶22**        To be sure, Ernst and Schneider raise strong arguments that Rachelle lost her invitee status when she stepped off the walkway. But the Westermans' task on summary judgment was only to "present sufficient evidence demonstrating the existence of a genuine factual dispute as to a material fact," *Thruston*, 218 Ariz. 112, ¶ 26, and they have done so. *See Orme Sch.*, 166 Ariz. at 310 ("[S]ummary judgment should not be used as a substitute for jury trials simply because the trial judge may believe the moving party *will* probably win the jury's verdict, nor even when the trial judge believes the moving party *should* win the jury's verdict."). A reasonable factfinder could have found in Rachelle's favor on the invitee/trespasser issue, *see Allyn*, 167 Ariz. at 195, and this was a threshold factual question that had to be resolved before the superior court could identify, as a legal matter, the duty Ernst and Schneider owed Rachelle, *see McMurtry*, 231 Ariz. 244, ¶¶ 33-36; *Estate of Maudsley*, 227 Ariz. 430, ¶ 23; *Diggs*, 198 Ariz. 198, ¶ 11; *Juengel*, 15 Ariz. App. at 499. The court erred by finding Rachelle was a trespasser and granting summary judgment in Ernst and Schneider's favor.

## II. Unreasonably dangerous condition

**¶23**        The superior court also concluded that the change in elevation between the gravel and the walkway was open and obvious and thus not unreasonably dangerous as a matter of law. The court reasoned that "[i]t is obvious from the[] photographs that there is an elevation change between the sidewalk and the gravel landscaped area." As a result, the court concluded, Ernst and Schneider cannot be liable for Rachelle's injuries. The Westermans contend that this, too, is a disputed factual question, which the court erred by resolving on summary judgment. We agree.

**¶24**        As a preliminary matter, Ernst and Schneider ask us to recognize that an unreasonably dangerous condition is required to trigger a landowner's duty to an invitee and is therefore properly considered in the superior court's legal analysis of duty, not the jury's assessment of breach. *See Quiroz*, 243 Ariz. 560, ¶ 7 (discussing elements of negligence claim). In

a notice of supplemental authority, they cite *Perez v. Circle K Convenience Stores, Inc.*, 257 Ariz. 244, ¶ 13 (App. 2024), *review granted* (Ariz. Nov. 6, 2024), in which a panel of this court concluded that a superior court's duty analysis necessarily "includes a determination of reasonableness." The panel reasoned that "the known or obvious nature of a condition is necessary to determine reasonableness." *Id.* ¶ 23. A court may therefore, in the panel's view, "examine facts sufficient to establish whether an 'unreasonably dangerous' condition existed to trigger a duty." *Id.* ¶ 27.

**¶25** But as the Westermans correctly observe, Ernst and Schneider did not argue below that the determination whether an unreasonably dangerous condition exists is part of the duty analysis, resulting in that argument's waiver. *See BMO Harris Bank N.A. v. Espiau*, 251 Ariz. 588, ¶ 25 (App. 2021) (trial court must be given opportunity to address merits of legal theories, and party's failure to give court that opportunity results in theory's waiver on appeal). And even were we to exercise our discretion to overlook that waiver, *see Logan B. v. Dep't of Child Safety*, 244 Ariz. 532, ¶ 9 (App. 2018), there is a genuine issue of material fact as to whether the change in elevation here was unreasonably dangerous. We therefore need not resolve whether the existence of an unreasonably dangerous condition is part of the duty analysis or the breach analysis because, even assuming it is a question of duty, summary judgment is inappropriate here. *See Estate of Maudsley*, 227 Ariz. 430, ¶ 23; *Diggs*, 198 Ariz. 198, ¶ 11.

**¶26** "Notwithstanding the existence of a duty, a landowner can be relieved of liability if the injury was caused by an open and obvious condition." *McMurtry*, 231 Ariz. 244, ¶ 24; *see Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 356 (1985) ("Although a land possessor is under a duty to his invitees, he is not ordinarily found negligent for injuries to those invitees from conditions which are open and obvious, nor for those which are known to the invitee."). But "the open and obvious condition is merely a factor to be taken into consideration in determining whether the condition was unreasonably dangerous." *Cummings v. Prater*, 95 Ariz. 20, 27 (1963). "[T]he bare fact that a condition is open and obvious does not necessarily mean that it is not unreasonably dangerous"; that question ordinarily must be determined by a jury as the trier of fact. *Tribe v. Shell Oil Co.*, 133 Ariz. 517, 519 (1982).

**¶27** Here, photographs taken from the parking lot depict a clear change in elevation between the lot and the walkway and the gravel and the curb, and Rachelle admitted at her deposition to having been aware that the walkway was higher in elevation than the parking lot. But Rachelle also

testified that, when she had stepped off the walkway onto the gravel, she did not perceive the change in elevation between those two surfaces. She maintained she had experienced an "optical illusion" that made the gravel appear to be the same level as the concrete, and she produced a photograph appearing to corroborate this view. She further offered an affidavit from an engineering expert, who opined that the unmarked change in elevation placed patrons at risk of experiencing the type of "air step" that injured Rachelle. On this record, a genuine factual dispute exists concerning whether the elevation change was open and obvious and not unreasonably dangerous, making summary judgment inappropriate. *See Thruston*, 218 Ariz. 112, ¶¶ 14-15.

### Disposition

¶28      For the reasons set forth above, we vacate the superior court's order granting summary judgment and remand for proceedings consistent with this decision.